NEWMAN, Circuit Judge,
concurring in part, dissenting in part.
I concur in Parts I and II of the majority opinion, for I agree that principles of due process, as well as the strictures of the Administrative Procedure Act as applied to the America Invents Act (AIA) and the Patent and Trademark Office (PTO), require that the parties have the opportunity to adjust their arguments and evidence to the Patent Trial and Appeal Board’s (PTAB’s) change in claim construction.
I write separately because the PTAB’s practice of deciding the validity of only some of the patent claims challenged in the petition does not conform to the America Invents Act. I stated these concerns in Synopsys, Inc., v. Mentor Graphics Corp., 814 F.3d 1309, 1324, 117 U.S.P.Q.2d 1753, 1765 (Fed. Cir. 2016) (Newman, J., dissenting). The facts and rulings in the present case further illuminate the error in the PTO’s adoption of rules that depart from the legislative plan. The exclusion of some of the challenged claims from the statutory procedures and estoppels of the AIA, accomplished by accepting some of the claims for which review is sought while ignoring others, in the PTO’s absolute discretion, serves no purpose other than to negate the intended legislative purpose of the AIA.
The PTO practice replaces the benefits of the America Invents Act with new disadvantages, for, after the extensive (and expensive) proceedings of inter partes review, the parties are left with unaddressed claims to the same patented invention, claims that can be litigated as if no post-grant proceeding had occurred. This departure from the legislative purpose is illustrated in this case more strongly than in Synopsys, for here the PTAB issued a split final decision, invalidating eight petitioned claims while validating one of the petitioned claims, simultaneously ignoring seven other petitioned claims that were properly presented for review. The split decision, following a partial institution, adds to the uncertainty of the claims that the PTAB chose not to review. The legislative plan contains no hint of such intentional irregularity.
As experience is gathered on diverse factual situations and the PTO’s erratic implementation, concerns have arisen within the communities that collaborated in the evolution of the America Invents Act. It is incumbent on the courts to assure the correct statutory interpretation by administrative agencies charged with statutory administration. Thus I respectfully dissent from Part III of the majority opinion, and the majority’s ratification of the PTO practice of addressing only some of the challenged claims in a fully compliant IPR petition.
Discussion
The America Invents Act created a new expert tribunal, charged to act with expedition and economy. Its purpose is to facilitate both the validation of properly issued patents and the elimination of invalid patents, both in service to the compelling national interest in invention and innovation. The PTO’s position that it need not review some of the claims challenged in a petition for review via a post-grant proceeding is inconsistent with the Act. The PTO is authorized to refuse to institute review entirely — but a partial review cannot be inferred from the statute or accommodated to its purpose.
The statutory provisions and the legislative purpose of substituting an agency tribunal for district court proceedings on as *1354 pects of patent validity are defeated by the PTO’s position that it can leave some challenged claims untouched. The America Invents Act presents a new system of reviewing issued patents, providing for stays of district court proceedings, and estoppels in all tribunals, based on the PTO decision. Final determination of the validity of a challenged patent is not achieved when the PTO selects, at its sole and unreviewable choice, which claims it will review and which it will not touch.
The post-grant procedures of the America Invents Act are of great power and promise. However, as implemented by the PTO, these procedures have produced a startlingly destabilizing effect. As an ami-cus curiae stated in an AIA case before the Supreme Court on a different aspect of the statute, “IPR was meant to open an alternative pathway to the accurate resolution of patent disputes, not a gaping loophole that undermines the integrity of both administrative and federal court patent adjudications.” Brief for Intellectual Ventures as Amicus Curiae Supporting Petitioner, Cuozzo Speed Techs., LLC v. Lee (No. 15-446), 2016 WL 825549.
The AIA provisions are designed to act in harmony, like a well-oiled engine. Incorrect implementation by the agency distorts the framework, providing the now-observed result of protracted litigation grinding against administrative obstinacy. The victim is the Nation’s innovation economy.
Statutory compliance is the judicial obligation. I focus on specific statutory provisions that relate to, and are violated by, the PTO’s practice of partial decision of IPR petitions, viz., 35 U.S.C. §§ 311, 312, 314, 315, and 318, and AIA Section 18(a)(D).

35 U.S.C § 311. Inter Partes Review

Section 311 states the scope of inter partes review, and limits such review to challenges that “could be raised under section 102 and 103 and only on the basis of prior art consisting of patents or printed publications.” 35 U.S.C. § 311(b). The AIA proceeding is structured as a complete alternative to litigation of these issues. In providing a meaningful alternative to district court litigation of these primary issues of patent validity, Congress designed the AIA to achieve expeditious and economical final resolution. See, e.g., Patent Reform Act of 2009: Hearing Before the House Comm, on the Judiciary, 111th Cong. 153 (2009) (statement of Rep. Man-zullo) (“It is clearly appropriate to have an administrative process for challenging patent validity, but it should exist within a structure that guarantees a quick — and final — determination.”).
The legislative record is uniform and compelling. See, e.g., Patent Reform: The Future of American Innovation: Hearing Before the Senate Comm, on the Judiciary, 110th Cong. 13 (2007) (statement of Jon Dudas, Director, USPTO) (“[T]he es-toppel needs to be quite strong that says on the second window any issue that you raised or could have raised you can bring up no place else. That second window, from the administration’s position, is intended to allow nothing — a complete alternative to litigation.”).
At enactment of the AIA in 2011, Senator Grassley summarized that
if an inter partes review is instituted while litigation is pending, that review will completely substitute for at least the patents-and-printed-publications portion of the civil litigation.
157 Cong. Rec. S1360-94 (daily ed. March 8, 2011) (statement of Sen. Grassley).
The intended complete alternative and complete substitution is impossible if the PTAB chooses incomplete review. That is my concern with Part III of the majority opinion.

*1355
35 U.S.C. § 312. Petitions for review

Section 312 sets the requirements for petitions for post-grant review. Among others, the petition must identify:
[I]n writing and with particularity, each claim challenged, the grounds on which the challenge to each claim is based, and the evidence that supports the grounds for the challenge to each claim, including—
(A) copies of patents and printed publications that the petitioner relies upon to support the petition, and
(B) affidavits or declarations of supporting evidence and opinions, if the petitioner relies on expert opinions;
35 U.S.C. § 312(a)(3). The purpose of these detailed filing requirements is: “to force a petitioner to present all of his best evidence against a patent up front. His petition itself must present a full affirmative case. It thus reinforces the front loaded nature of an oppositional system, which is critical to the efficient resolution of proceedings by the PTO.” 154 Cong. Rec. S9982-93 (daily ed. Sept. 25, 2008) (statement of Senator Kyi on S. 3600).
In the case at bar, SAS presented complete evidence as to all of the claims that it challenged in the petition, and Complem-entSoft provided a full response. Nonetheless, the PTO refused to consider all of the claims that had been placed at issue, leaving seven claims undecided.
The petition for review sets the boundaries of the IPR proceeding, as summarized by Senator Grassley on enactment of S. 23, that “by requiring petitioners to tie their challenges to particular validity arguments against particular claims, the new threshold will prevent challenges from ‘mushrooming’ after the review is instituted into additional arguments employing other prior art or attacking other claims.” 157 Cong. Rec. S1360-94 (daily ed. March 8, 2011). It is not disputed that these requirements were met in the petition presented in this case.
Section 312, like the rest of the AIA, provides no support for the PTO’s practice of accepting consideration of some of the patent claims in the petition while ignoring others, when all challenged claims are fully documented and briefed in compliance with the statute. The PTO’s selective practice is especially deleterious to the statutory purpose when the patent is in validity litigation in the district court.

35 U.S.C. § 314. Institution of Inter Partes Review

Section 314(a) establishes the threshold required for the Director to institute proceedings adjudicating validity:
The Director may not authorize an inter partes review to be instituted unless the Director determines that the information presented in the petition filed under section 311 and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition.
35 U.S.C. § 314(a). The statute does not provide the PTO with discretion to pick and choose which of the challenged claims will be included in the post-grant review when at least one claim is found to have crossed the threshold of likely invalidity. The Director can still refuse to institute review entirely, but the Director cannot choose to consider some of the challenged claims and to ignore others. The PTO departed from the statute in adopting regulations that authorize review of only some of the challenged claims and grounds, as in 37 C.F.R. 42.108(a):
(a) When instituting inter partes review, the Board may authorize the review to proceed on all or some of the challenged claims and on all or some of the grounds of unpatentability asserted for each claim.
*1356 I am not here concerned with the statutory-authorization for complete denial of a petition to institute, for then the petitioner may proceed promptly with litigation. My concern is with the unauthorized partial institution after a PTO finding that at least one of the patent claims faces a likelihood of invalidity. This defeats the legislative purpose of creating a “substitute for court litigation” that is a “quick and cost effective alternative[ ]” where challengers must “front load their case,” and the decision imposes estoppel to “eliminate the need to press any claims in other fora.” Patent Reform: The Future of American Innovation: Hearing Before the Senate Comm. On the Judiciary, 110th Cong. 7 (2007) (written responses of Jon Dudas, Director, USPTO); H.R. Rep. No. 112-98, pt. 1 at 48 (2011); 157 Cong. Rec. S1860-94 (daily ed. March 8, 2011) (Sen. Grassley during Senate consideration, amendment, and passage of S. 23); 154 Cong. Rec. S9982-93 (daily ed. Sept. 25, 2008) (statement of Sen. Kyl on S. 3600 (Patent Reform)).
Authorization to refuse to institute a petition was included in response to the concerns of then Director Dudas about whether the PTO could handle the increased workload within the statutory time frame; this accommodation did not also authorize the PTO to choose to decide part of a petition and leave the other part undecided. Partial institution is not a reasonable statutory interpretation — it. imposes additional delay, uncertainty, and cost; all contrary to the purposes of the AIA. It particularly affects § 315, discussed post, which imposes estoppel against the petitioner on all grounds that were “raised or reasonably could have [been] raised” in the IPR petition.
The AIA provides for two determinations by the Director when a petition for post-grant review has been filed: (1) whether the petitioner has presented grounds reasonably likely to invalidate at •least one of the challenged claims, and (2) whether to institute post-grant review. Senator Kyi explained that the grant of discretion to the Director to refuse to institute review even when the invalidity threshold is met “reflects a legislative judgment that it is better that the Office turn away some petitions that otherwise satisfy the threshold for instituting an inter partes or post-grant review than it is to allow the Office to develop a backlog of instituted reviews that precludes the Office from timely completing proceedings.” 157 Cong. Rec. S1377 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl).

35 U.S.C § 315. Estoppel

Section 315 establishes how these post-grant procedures interact with other aspects of patent litigation. Among the consequences of the PTO’s curious and unforeseen practice, partial review does not estop unreviewed claims as to either validity or invalidity, thereby adding to the litigants’ burden rather than lightening it. The estoppel provisions were the subject of extensive legislative discussion.
Section 315(e) provides that when a petition for review is granted and the matter proceeds to trial and decision in the PTAB in accordance with § 318(a), estoppel arises with respect to “any ground that the petitioner raised or reasonably could have raised during that inter partes review.” This estoppel applies in the PTO, in the district courts, and in the International Trade Commission.
35 U.S.C. § 315(e) Estoppel.—
(1) Proceedings before the office. — The petitioner in an inter partes review of a claim in a patent under this chapter that results in a final written decision under section 318(a), or the real party in interest or privy of the petitioner, may not request or maintain a proceeding before the Office with respect to that claim on any ground that the petitioner raised or *1357 reasonably could have raised during that inter partes review.
(2) Civil actions and other proceedings. — The petitioner in an inter partes review of a claim in a patent under this chapter that results in a final written decision under section 318(a), or the real party in interest or privy of the petitioner, may not assert either in a civil action arising in whole or in part under section 1338 of title 28 or in a proceeding before the International Trade Commission under section 337 of the Tariff Act of 1930 that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review.
The America Invents Act was designed — after a decade of hearings and revisions — to reduce the cost of patent litigation, to resolve major validity issues in an expert tribunal, and to put an end to repetitive challenges. The estoppel provision was a controversial aspect of the enactment.
An interim Senate Report states that contributors were concerned about the fairness of the “could have raised” estoppel provision, given the extremely limited discovery available to petitioners. See S. Rep. No. 111-18, at 17, to accompany S. 515 (Patent Reform Act of 2009) (“Many businesses also have described could-have-raised estoppel as a powerful brake on their use of inter partes reexamination. They find this standard vague and uncertain, and fear that if they challenge a patent in an inter partes reexamination, they will lose the ability to raise later-discovered prior art against the patent if they are subsequently sued for infringement.”).
Congress initially considered a lesser es-toppel. See S. Rep. No. 110-259, at 22, to accompany S. 1145 (“Moreover, once a petitioner has challenged the validity of a patent through a PGR, that party may not challenge validity in a court proceeding bas.ed on any ground it raised during the PGR”). But, by the time of enactment of the AIA in 2011, stronger estoppel provisions appear to have achieved consensus. See 157 Cong. Rec. S952 (Feb. 28, 2011) (statement of Sen. Grassley on final consideration of S. 23):
In addition, the bill would improve the current inter partes administrative process for challenging the validity of a patent. It would establish an adversarial inter partes review, with a higher threshold for initiating a proceeding and procedural safeguards to prevent a challenger from using the process to harass patent owners. It also would include a strengthened estoppel standard to prevent petitioners from raising in a subsequent challenge the same patent issues that were raised or reasonably could have been raised in a prior challenge. The bill would significantly reduce the ability to use post-grant procedures for abusive serial challenges to patents. These new procedures would also provide faster, less costly, alternatives to civil litigation.
Director Dudas had urged that because the PTO procedures are intended to substitute for district court litigation, litigation-type estoppel should attach to PTAB rulings:
We would favor providing for a second-window review to have a different estop-pel effect than a first-window review. ... A second-window review, however, will serve as a substitute for court litigation and, as such, should bind not only the patentee but also the challenger as a decision on the merits in litigation would.
Patent Reform: The Future of American Innovation: Hearing Before the Senate Comm, on the Judiciary, 110th Cong. 136- *1358 137 (2007) (statement of Jon Dudas, Director, USPTO).
Senator Grassley further summarized, at enactment, that the purpose of the estop-pel is to “completely substitute” for the same issues in litigation.
Ideally extending could-have-raised es-toppel to privies will help ensure that if an inter partes review is instituted while litigation is pending, that review will completely substitute for at least the patents-and-printed-publications portion of the civil litigation.
157 Cong. Rec. S1360-94 (daily ed. March 8, 2011) (statement of Sen. Grassley). When PTO Director Kappos took office as the legislation neared finality, he stated at a closing hearing on the America Invents Act:
If I can say that in my own words also, that I believe there are significant advantages for patentees who successfully go through the post-grant system — in this case inter partes review- — because of those estoppel provisions. Those es-toppel provisions mean that your patent is largely unchallengeable by the same party.
America Invents Act: Hearing on H.R. 1219 Before the House Comm, on the Judiciary, 112th Cong. 52-53 (2011) (statement of David Kappos, Director, USPTO).
The “complete substitution” for section 102 and 103 issues cannot occur unless all of the claims challenged in the petition are included when post-grant review is accepted. Challengers may choose between the IPR proceeding and district court litigation of the same issues, but Congress restricted the repetitive validity proceedings of the past. A witness testified that:
With respect to your question on alternatives to litigation... 38% of all inter partes reexaminations brought between 2001 and. 2005 were filed after patent litigation had already begun, showing that this proceeding, to a very significant part, is not used instead of litigation, but on top of litigation, and sometime even after litigation in attempts at undoing adverse district court judgments.
Patent Reform: The Future of American Innovation Before the Senate Comm, on the Judiciary, 110th Cong. 94 (written testimony for Alkermes pic) (emphasis original).
Senator Schumer stated at enactment of S. 23:
Too many district courts have been content to allow litigation to grind on while a reexamination is being conducted, forcing the parties to fight in two fora at the same time. This is unacceptable, and would be contrary to the fundamental purpose of ... providing] a cost efficient alternative to litigation.
157 Cong. Rec. S1360-94 (March 8, 2011) (statement of Sen. Schumer).
These universally emphasized AIA purposes fall flat when the PTO chooses to review some but not all of the challenged claims in the petition, leaving the other claims presumably alive and well. The legislation does not contemplate such a procedure. The legislation provides only for a PTO proceeding that subjects “any patent claim challenged by the petitioner and any new claim added” during the proceeding to be fully and finally decided through the PTO proceeding and its subsequent appeal, bringing “more certainty in litigation.” 157 Cong. Rec. S948 (Feb. 28, 2011) (statement of Sen. Leahy on Senate consideration of S. 23) (emphasis added).
This finality is achieved by the estoppel provisions as applied to the decision on every claim challenged by the petitioner as to every issue raised or that could have been raised. America Invents Act: Hearing on H.R. 1219 Before the House Comm, on the'Judiciary, 112th Cong. 12 (2011) (statement of David Kappos, Director, *1359 USPTO) (“Those estoppel provisions mean that your patent is largely unchallengeable by the same party.”). However, when review is declined as to some claims that may be of litigation interest, the partial institution practice cannot be a “complete[ ] substitute for ... [a] portion of civil litigation.” This contravenes a primary purpose of the AIA.
During oral argument of this appeal, the court questioned PTO counsel on the relationship between the conduct of reexamination proceedings, the conduct of inter partes review proceedings, and the legislative purpose of the AIA’s post-grant procedures. Oral Argument at 25:28-37:20. In a letter, the PTO provided MPEP sections 2243 and 2246, stating that reexamination under past PTO practice authorized by Section 302 may be conducted on “fewer than all claims in the subject patent or in the reexamination request.” The PTO stated that this supports the partial institution practice for AIA proceedings. PTO Letter, January 11, 2016, EOF No. 61. The PTO urged that Chevron deference should be applied.
However, the legislative history is clear that the AIA inter partes review proceedings were designed to correct inadequacies plaguing the former procedure. The former PTO reexamination differs from AIA review in that (1) reexamination under § 302 is conducted by an examiner on the written record, not by the PTAB with discovery, witnesses, and trial; (2) § 302 reexamination entitles amendment as of right, and examination of the amended claims is of right, contrary to the PTO’s implementation of the AIA statute; (3) no estoppel attaches to § 302 reexamination, unlike the AIA rulings; and (4) § 302 reexamination requires “a substantial new question of patentability” and reexamination is mandatory when such a question is found, unlike the standard for “institution.”
The new AIA system was designed to improve upon the § 302 reexamination procedure. See 157 Cong. Rec. S952 (Feb. 28, 2011) (statement of Sen. Grassley on Senate consideration of S.23) (“In addition, the bill would improve the current inter partes administrative process for challenging the validity of a patent.”); 157 Cong. Rec. S5370-77 (Sept. 7, 2011) (statement of Sen. Whitehouse on Senate consideration of H.R. 1249) (“Administrative processes that should serve as an alternative to litigation [] have broken down, resulting in further delay, cost, and confusion.”).

35 U.S.C § 316. Conduct of inter partes review

In promulgating regulations authorizing partial institution, the PTO invoked the authority of Section 6(c) of the AIA, requiring the PTO to “issue regulations to carry out chapter 31 of title 35, United States Code, as amended by subsection (a) of this section.” See § 316(a) (“The Director shall prescribe regulations ... (2) setting forth the standards for the showing of sufficient grounds to institute a review under section 314(a); ... (4) establishing and governing inter partes review under this chapter and the relationship of such review to other proceedings under this title”). 77 Fed. Reg. 7058.
This authority does not include authorization to depart from the statute. See Ernst & Ernst v. Hochfelder, 425 U.S. 185, 213-14, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (“The rulemaking power granted to an administrative agency charged with the administration of a federal statute is not the power to make law. Rather, it is the power to adopt regulations to carry into effect the will of Congress as expressed by the statute.”); see also H.R. REP. NO. 110-314, at 45 (2007) (“Where Congress has seen fit to provide specific limitations or conditions in statute, the USPTO may *1360 not surpass or take away these limitations or conditions by promulgated rule.”).
The PTO improperly adopted a system of partial institution and partial final written decision, contravening the statute and the intent of Congress. The PTO has exceeded its statutory authority. It befalls this court to “add force and life to the cure and remedy, according to the true intent of the makers of the act.” Heydon’s Case, 76 Eng. Rep. 637, 638 (1584).

35 U.S.C § 318. Decision of the PTAB

Section 318 requires the Board to address all of the challenged claims apd to issue a final written decision. The statute provides:
§ 318(a). If an inter partes review is instituted and not dismissed under this chapter, the Patent Trial and Appeal Board shall issue a final written decision with respect to the patentability of any patent claim challenged by the petitioner and any new claim added under section 316(d).
The statute is clear: the Board’s final written decision must include “the patentability of any patent claim challenged by the petitioner and any new claim added under section 316(d).” Id. And when a petition is instituted, all of the challenged claims must be included in the final written decision. Id.
The totality of provisions and history of the America Invents Act demonstrates that the PTO has erroneously adopted a system of partial review and partial decision that was not contemplated, not intended, not discussed, and indeed not suspected by Congress and the communities concerned with patent legislation.
CONCLUSION
The panel majority reinforces the erroneous PTO regulations and practices that contravene the statute. I respectfully dissent from Part III of the court’s opinion.